341 F.3d 751
 Mary OTTMAN, Plaintiff-Appellee,
v.
CITY OF INDEPENDENCE, MISSOURI, Defendant,
Bruce Hahl, in his official and individual capacity; Rob Richardson, in his official and individual capacity, Defendants-Appellants.
 No. 02-2335.
 United States Court of Appeals, Eighth Circuit.
 Submitted: December 10, 2002.
 Filed: September 3, 2003.
 Order Denying Petition for Rehearing and for Rehearing En Banc October 1, 2003.
 
 COPYRIGHT MATERIAL OMITTED The petition for rehearing en banc is denied. The petition for rehearing by the panel is also denied.
 J. Earlene Farr, argued, Kansas City, MO, for appellant.
 Kirk D. Holman, argued, Kansas City, MO, for appellee.
 Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.
 RILEY, Circuit Judge.
 
 
 1
 Mary Ottman (Ottman) was employed as a city planner with the City of Independence, Missouri (City). Ottman filed a lawsuit against the City, Bruce Hahl (Hahl) and Rob Richardson (Richardson) alleging violations of 42 U.S.C. § 1983 (2000), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17 (2000) (Title VII), the Missouri Human Rights Act, Mo.Rev.Stat. §§ 213.010-213.137 (2000) (MHRA), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 (2000). Defendants moved for summary judgment. The district court denied Hahl and Richardson summary judgment based on qualified immunity. Hahl and Richardson filed this interlocutory appeal, contending the district court erred in denying them qualified immunity. We reverse.
 
 I. BACKGROUND
 
 2
 As Director of the Community Development Department (Department) for the City, Hahl hired personnel, recommended hiring salaries, and assigned work to Department employees. In January 1996, Hahl hired Richardson as a city planner at a starting salary of $34,200. Richardson had considerable planning experience, including experience working on City planning projects. Hahl claims he told Richardson that once Richardson completed his master's degree, Richardson would be eligible for a promotion to senior planner. Ottman contends Hahl assured Richardson that, upon completion of his master's degree, Richardson would be promoted to senior planner.
 
 
 3
 In May 1997, Hahl interviewed Ottman for a city planner position. Ottman had a master's degree in landscape architecture. During her interview, Hahl asked Ottman if she objected to working on landscape architecture and design projects. Ottman told Hahl she would not mind working on such projects, but she did not want them to comprise her principal work. Hahl told Ottman a senior planning position would be opening in the future, and Ottman could compete for the position along with another person in the office. Hahl hired Ottman at a starting salary of $29,500.[1]
 
 
 4
 Hahl also hired Jim Marwedel (Marwedel) as a city planner.[2] Marwedel had a master's degree and considerable planning experience. Marwedel's starting salary was $33,996 ($2,833 per month). When Marwedel was hired, Ottman was earning $34,200 annually ($2,850 per month).
 
 
 5
 In May 1998, Richardson received his master's degree in urban planning. In August 1998, a senior planner position opened in the Department. Both Ottman and Richardson applied for the position. The Director of Human Resources certified Ottman and Richardson as eligible for the position. After interviewing Ottman and Richardson, Hahl promoted Richardson.[3] When Ottman was not promoted, she did not file a formal complaint with either the Director of Human Resources or the City Administrator. She did, however, complain to Hahl, her immediate supervisor.
 
 
 6
 Within a few months of being employed in the Department, Ottman believed Hahl was giving her inferior job assignments because of her gender. Ottman repeatedly complained to Hahl about being displeased with her work assignments and about not being assigned to professionally significant planning jobs. Because of her landscape architecture background, some of Ottman's assignments were expressly requested by the mayor. It does not appear Ottman specifically complained to Hahl she was being denied significant jobs because of her gender. However, Ottman once complained to the City Manager about Hahl's sexual discrimination relating to a landscape screening project. Ottman could not recall when she made the complaint or what happened thereafter.
 
 
 7
 Ottman also believed Hahl discriminated against her by excluding her from weekly department meetings. Ottman does not recall complaining to Hahl about the exclusion and does not know during what time period the exclusion occurred. In the fall of 1998, Richardson attended a leadership training seminar which Ottman was not allowed to attend. Janet Groucher, a female co-worker, attended weekly department meetings and also attended the fall 1998 leadership training seminar.
 
 
 8
 Ottman contends Hahl and Richardson sexually harassed her by creating a hostile work environment. Ottman alleges Hahl treated female employees differently than males, and his disparate treatment was reflected in his words and actions. Ottman testified Hahl belittled her work and conversed with female employees in a superior and condescending tone, which he did not use when talking with men.
 
 
 9
 Ottman alleges Richardson made sexist remarks on a weekly, if not daily, basis. Richardson did not have supervisory authority over Ottman and did not have authority to recommend disciplinary action against Ottman. On at least three occasions, Ottman complained to Hahl about Richardson's hostile treatment. Ottman claims Hahl failed to take seriously her complaints against Richardson. Hahl spoke to Richardson about Ottman's complaints. Ottman also claims Richardson continued to harass her after Hahl met with Richardson, but Ottman never informed Hahl of Richardson's continuing harassment.
 
 
 10
 Ottman testified Hahl told her not to complain of harassment or discrimination to anyone but him. Although she orally complained to Hahl, Ottman never made a written complaint alleging harassment or discrimination based on gender or age. Ottman's last oral complaint to Hahl was made in December 1999. Ottman resigned in May 2000.
 
 
 11
 Ottman filed a fifteen-count suit against the City, Hahl, and Richardson, alleging constitutional and statutory violations. Ottman alleged one count of discrimination and sexual harassment under section 1983 against Hahl, in his individual capacity, and one count of sexual harassment under section 1983 against Richardson, in his individual capacity. The district court dismissed as time-barred two counts, alleging discrimination in promotion under Title VII and the MHRA. The district court denied the defendants' motion for summary judgment on the remaining claims, including Hahl's and Richardson's defense of qualified immunity. Hahl and Richardson appeal the denial of qualified immunity.
 
 II. DISCUSSION
 A. Overview
 
 12
 A defendant may immediately appeal a district court's denial of qualified immunity under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 525-30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We review de novo a denial of qualified immunity. Holloway v. Reeves, 277 F.3d 1035, 1037 (8th Cir.2002).
 
 
 13
 Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Recently, the Supreme Court reiterated the law is clearly established if it gives the official "fair warning" his conduct violated an individual's rights when the officer acted. Hope v. Pelzer, 536 U.S. 730, 739-40, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Guided by this precedent, we must consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. 2151.
 
 B. Defendant Hahl
 1. Failure to Promote
 
 14
 We turn first to Ottman's claim that Hahl denied her equal protection based on gender by failing to promote Ottman to the senior planning position. A government official may be liable upon a showing of deprivation of a constitutional or federal right. 42 U.S.C. § 1983. To establish a section 1983 cause of action, Ottman must establish she was deprived of a right "secured by the Constitution and laws" of the United States, and (2) the deprivation was caused by a person or persons acting under color of state law. 42 U.S.C. § 1983; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). We have held intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983. Marshall v. Kirkland, 602 F.2d 1282, 1298 (8th Cir.1979).
 
 
 15
 To succeed on her claim, Ottman must establish intentional gender discrimination. Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Where, as in this case, no direct evidence of gender discrimination exists, we apply the McDonnell Douglas burden-shifting analysis to section 1983 employment discrimination claims as a way to establish intentional discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Mayer v. Nextel W. Corp., 318 F.3d 803, 806-07 (8th Cir. 2003) (ADEA); Floyd v. Mo. Dep't of Soc. Servs., 188 F.3d 932, 936 (8th Cir.1999) (section 1983 claim based on due process and equal protection).
 
 
 16
 To establish a prima facie case of gender discrimination based on a failure to promote, Ottman must demonstrate (1) she is a member of a protected class; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) a similarly situated employee, not part of the protected group, was promoted instead. Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1046 (8th Cir.2002). If Ottman establishes a prima facie case of intentional gender discrimination, the burden then shifts to Hahl "to articulate some legitimate, non-discriminatory reason for the employee's rejection." McDonnell, 411 U.S. at 802, 93 S.Ct. 1817. If Hahl satisfies this burden of production, then Ottman must show the proffered reason is a pretext for intentional discrimination. Ross, 293 F.3d at 1046; Floyd, 188 F.3d at 936 (citing Burdine, 450 U.S. at 253, 101 S.Ct. 1089). The burden of persuasion remains with Ottman. Floyd, 188 F.3d at 936. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); see Mayer, 318 F.3d at 808.
 
 
 17
 Hahl does not dispute Ottman is a member of a protected class, who applied for and was qualified for the senior planning position. Hahl argues Ottman fails to make a prima facie case of gender discrimination because she cannot establish she was similarly situated to Richardson, who was promoted to the senior planning position. The job description for the senior planning position stated the minimum qualifications were a bachelor's degree and master's degree in urban planning or related field and four years professional planning experience. The job description also stated certification by the American Institute of Certified Planners (AICP) was preferred. The Director of Human Resources certified Ottman and Richardson as eligible for the newly created position. Ottman and Richardson were both experienced city planners with master's degrees. For the purposes of establishing a prima facie case, we believe Ottman has sufficiently shown she was similarly situated to Richardson.
 
 
 18
 Alternatively, Hahl contends (1) he has established a legitimate, nondiscriminatory reason for promoting Richardson, and (2) Ottman has failed to establish proof of pretext. Hahl promoted Richardson to the senior planning position because he did not believe Ottman met the minimum qualifications. When Richardson applied for the senior planning position, he had a master's degree in urban planning, more than five years experience in urban planning, and was certified by the AICP. Richardson had leadership experience as past president and vice president of the Kansas City Metro Section of the American Planning Association (APA), as well as public speaking and publishing experience on urban planning issues. Five project plans on which Richardson had previously worked received state or APA planning awards.
 
 
 19
 When Ottman applied for the same position, she had a master's degree in a related area of landscape architecture, and between three and four years of professional planning experience. Ottman did not have supervisory experience, was not certified by the AICP, and had not spoken publicly to planners or published on urban planning. None of Ottman's planning projects had received state or APA planning awards.
 
 
 20
 Ottman admits Hahl did not promote her because Hahl determined she was not qualified. However, Ottman claims this reason was a pretext for gender discrimination, because the Director of Human Resources certified Ottman as qualified for the position. Employers, not courts, are in the best position to determine the most qualified applicant for a given position. "We refuse to sit as a super-personnel department," second-guessing employment decisions. Mayer, 318 F.3d at 810. As Director, Hahl was entitled to exercise his independent judgment and select, from the certified pool, the applicant he deemed most qualified. Hahl selected Richardson because he had (1) a master's degree in urban planning; (2) more planning experience than Ottman; (3) AICP certification; (4) professional leadership, speaking, and publishing experience; and (5) received distinguished state and APA awards for prior planning projects. Because Ottman has failed to offer any evidence from which a reasonable jury could conclude Hahl's stated reason for not promoting her was a pretext for intentional discrimination, Ottman's claim fails as a matter of law, and Hahl is entitled to qualified immunity.
 
 2. Disparate Pay
 
 21
 Ottman alleges Hahl intentionally discriminated against her by paying Ottman a lower starting salary than male planners, namely, Richardson and Marwedel. Ottman claims the pay disparity violated her right to equal protection on the basis of sex. Ottman does not allege the pay disparity violated her federal statutory rights under the Equal Pay Act (EPA), which does not require proof of discriminatory intent. See Varner v. Ill. State Univ., 226 F.3d 927, 932 (7th Cir.2000) ("Under the Equal Pay Act, an employer is potentially subject to liability without a showing of discriminatory intent."); see also Berry v. Bd. of Supervisors of L.S.U., 715 F.2d 971, 975 (5th Cir.1983) (holding mere allegation that a female professor was paid less than a male colleague for equal work stated a claim under the EPA).
 
 
 22
 Because Ottman claims the pay disparity violated her right to equal protection, Ottman must prove the pay disparity was motivated by a discriminatory animus. See Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 274, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (declaring "purposeful [gender] discrimination is `the condition that offends the Constitution'") (internal quotation omitted); Washington v. Davis, 426 U.S. 229, 238-39, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). We join the Tenth and Eleventh Circuits in deciding that McDonnell Douglas and Burdine provide the appropriate framework for evaluating an indirect evidence claim of gender-based wage discrimination. See Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1362-63 (10th Cir. 1997); Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1018-19 (11th Cir.1994).
 
 
 23
 To establish a prima facie case of gender discrimination based on disparate pay, Ottman must establish she occupied an employment position similar to that of higher-paid males. Once a prima facie case is established, the defendant must articulate a legitimate, nondiscriminatory reason for the pay disparity. "This burden is `exceedingly light'; the defendant must merely proffer non-gender based reasons, not prove them." Id. at 1019 (citation omitted). "Once the defendant advances such a justification, the plaintiff must show that the defendant, regardless of the proffered reasons, intentionally discriminated against her." Sprague, 129 F.3d at 1363. "[T]he plaintiff must show that `a discriminatory reason more likely than not motivated [the employer] to pay her less.'" Meeks, 15 F.3d at 1019 (citation omitted).
 
 
 24
 The record establishes Hahn hired Richardson as a planner in January 1996, at a starting salary of $34,200. When Richardson applied for the city planner position, he was working as a planner for HNTB at a salary of $32,800. When hired, Richardson had more than four years of professional planning, project organization, and project management experience, including experience he had gained working on two City planning projects.
 
 
 25
 Hahl hired Ottman as a planner in May 1997, at a starting salary of $29,500, which was above the minimum rate of pay for the position. When hired, Ottman had a master's degree in landscape architecture and 37 months experience in urban planning. The summary judgment facts do not reveal Ottman's salary history at the time she applied for the city planner position.[4]
 
 
 26
 In 1999, Hahl hired Marwedel as a planner at a starting salary of $2,833 per month ($33,996 annually), which was above the minimum salary for the position at that time. Marwedel had a master's degree and considerable planning experience. At the time Marwedel was hired, Ottman was earning $2,850 per month, or $17 more per month than Marwedel.
 
 
 27
 In analyzing the pay discrimination claim, the district court did not expressly find Ottman had made a prima facie showing of disparate pay based on gender, nor did the district court find purposeful discrimination. Instead, the district court found the defendant had failed to provide sufficient information in the record to establish a legitimate, nondiscriminatory reason for the salary disparity, and denied summary judgment.
 
 
 28
 We conclude the court erred in analyzing the disparate pay claim as a statutory claim under the EPA, and should have analyzed the constitutional claim under the McDonnell Douglas/Burdine framework. Using this framework and relying on the summary judgment facts, we find Ottman established a prima facie case of disparate pay based on gender with respect to Richardson. We also find Hahl established legitimate, nondiscriminatory reasons for paying Richardson a higher starting salary based on Richardson's planning experience and salary history. However, we find Ottman failed to meet her burden of establishing Hahl's asserted reasons for the pay disparity were a pretext for intentional discrimination.
 
 
 29
 Moreover, Ottman failed to establish a prima facie case of disparate pay based on Marwedel's starting salary. Ottman was hired in May 1997. The record does not show Marwedel's hiring date, although it appears he may have been hired in July 1999, more than two years after Ottman. Unlike Richardson, who was hired at a higher salary seventeen months before Ottman, the fact that Marwedel's starting salary was approximately $4,000 greater than Ottman's starting salary does not raise an inference of discrimination, at least not without knowing whether the City increased the minimum salary for the city planner position over the more than two-year period between hirings. Because Ottman's gender discrimination claim based on disparate pay fails as a matter of law, Hahl is entitled to qualified immunity.
 
 3. Hostile Work Environment
 
 30
 Ottman further claims Hahl sexually harassed her by creating a hostile environment. "Intentional sexual harassment by persons acting under color of state law violates" the Equal Protection Clause of the Fourteenth Amendment and supports a section 1983 action. See Moring v. Ark. Dep't of Corr., 243 F.3d 452, 455 (8th Cir.2001). To establish a cause of action for hostile work environment sexual harassment, Ottman must prove (1) she "belongs to a protected group," (2) she was sexually harassed; (3) the conduct was based on Ottman's gender, (4) the conduct was unwelcome, and (5) "the harassment affected a term, condition, or privilege" of Ottman's employment. Id. (quoting Scusa v. Nestle USA Co., 181 F.3d 958, 964 (8th Cir.1999)).
 
 
 31
 "Harassment affects a term, condition, or privilege of employment if it is `sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir.1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Relevant factors for determining whether conduct rises to the level of abusiveness include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23, 114 S.Ct. 367. The Supreme Court has "made it clear" that "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (explaining only "conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive" is actionable under Title VII).
 
 
 32
 Viewing the evidence in the light most favorable to Ottman, the district court found Hahl had belittled the work of Ottman and other females, but had not belittled the work of male employees; had belittled women's abilities; had cut off Ottman's conversation with a city employee; had spoken condescendingly to Ottman, as if she were a child; had, on two separate occasions, made the comment, "It's just like a woman" referring to two women, not Ottman, who had disagreed with him; and had occasionally referred to women as "girls." Another female worker testified Hahl had declared "we need more men" and sometimes told female workers to "be quiet, men are talking." Based on these findings, the district court ruled that a genuine issue of fact exists whether Ottman's work environment was objectively hostile, and denied summary judgment.
 
 
 33
 Heeding Faragher and Oncale, as we must, we conclude the district court erred in finding a triable issue for the jury. Viewed objectively, Ottman's allegations and summary judgment proof do not raise a fact issue that Hahl's conduct clearly violated Ottman's federally protected rights to equal protection. Ottman failed to establish Hahl's alleged harassment was so severe or pervasive as to alter a term, condition or privilege of Ottman's employment. Duncan v. Gen. Motors Corp., 300 F.3d 928, 934 (8th Cir.2002) (manager's posting of derogatory poster combined with boorish behavior was not "so severe and extreme that a reasonable person would find that the terms or conditions of [] employment had been altered."); Scusa, 181 F.3d at 967 (nine incidents of unpleasant conduct and offensive comments, considered "either individually or collectively," were not "severe or pervasive enough so as to alter a term, condition, or privilege of [] employment."). Hahl's remarks, while certainly patronizing and unprofessional, cannot be characterized as "extreme" and did not constitute "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [Ottman's] employment and create an abusive working environment." See Oncale, 523 U.S. at 78, 118 S.Ct. 998 (quoting Harris, 510 U.S. at 21, 114 S.Ct. 367).
 
 
 34
 Ottman also claims Hahl, her immediate supervisor, failed to adequately address Ottman's complaints of co-worker sexual harassment in the workplace. On at least three occasions, Ottman complained to Hahl about Richardson's hostile remarks and hostile attitude toward women. Ottman did not take her complaints to another City official, because Hahl told Ottman and another female employee to report incidents of perceived harassment or discrimination only to Hahl. Ottman believed Hahl did not take seriously her complaints about Richardson's conduct. Based on these findings, the district court denied summary judgment.
 
 
 35
 In section 1983 actions, supervisory liability is limited. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir.1995). A supervisor cannot be held liable for an employee's unconstitutional actions based on a theory of respondeat superior. Id. (citing White v. Holmes, 21 F.3d 277, 280 (8th Cir.1994)). Rather, a supervisor incurs liability for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." Ripson v. Alles, 21 F.3d 805, 809 (8th Cir.1994) (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir.1988)).
 
 
 36
 We conclude the summary judgment record does not establish a genuine issue of material fact whether Hahl was deliberately indifferent to Ottman's federally protected rights. The undisputed facts establish that, after Ottman complained to Hahl of Richardson's sexual harassment, Hahl met with Richardson to discuss Ottman's complaints and later revisited the issue in Richardson's performance evaluations. The fact is also undisputed that, after Hahl met with Richardson concerning Ottman's complaint, Ottman never told Hahl that Richardson continued to harass her. Even if Hahl's actions ultimately proved "ineffectual" in curbing Richardson's harassing conduct, Hahl's actions do not demonstrate deliberate indifference. Therefore, Hahl is entitled to qualified immunity.
 
 C. Defendant Richardson
 
 37
 Finally, we turn to Ottman's claim that Richardson violated her right to equal protection by creating a hostile work environment. Richardson told Ottman women do not belong in the workplace and women should be "barefoot and pregnant." Moreover, Richardson remarked to Ottman, he would never let a woman drive him in a car. Richardson also told Ottman the reason he left his former employer was because a woman was promoted ahead of him. Ottman alleged Richardson made sexist remarks on a weekly, if not daily, basis.
 
 
 38
 To establish liability against Richardson in his individual capacity, Ottman must establish Richardson acted "under color of state law," and Richardson deprived Ottman of rights, privileges, or immunities secured by the Constitution or federal law. See 42 U.S.C. § 1983; Roe v. Humke, 128 F.3d 1213, 1215 (8th Cir.1997). "[A] defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. (citation omitted). A clear nexus must exist between the defendant's official conduct and the violation of the plaintiff's rights. See S.J. v. Kansas City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1028 (8th Cir.2002) (absent "some nexus" between teacher's governmental role and violation of student's rights, section 1983 claim against the individual teacher must fail).
 
 
 39
 "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir.1996) (citing Polk County v. Dodson, 454 U.S. 312, 319-20, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). The Tenth Circuit has rejected the contention that co-worker harassment was done under color of law "when the harassment did not involve use of state authority or position." Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir.1992) (citing cases). "The dispositive issue is whether the defendant acted pursuant to power he or she possessed by state authority." Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1523 (11th Cir.1995).
 
 
 40
 When the alleged harassment does not involve the use of either state authority or position, courts have declined to find co-workers liable under section 1983. Id.; Woodward, 977 F.2d at 1400 (defendant law enforcement officers were not liable under section 1983 for sexually harassing dispatchers employed by a separate employer); Hughes v. Halifax County Sch. Bd., 855 F.2d 183, 186-87 (4th Cir.1988) (co-workers were not acting with state authority when they taunted plaintiff and performed a mock hanging of plaintiff); Murphy v. Chicago Transit Auth., 638 F.Supp. 464, 468 (N.D.Ill.1986) (staff attorneys who sexually harassed fellow staff attorney were not liable pursuant to section 1983). Here, the summary judgment facts clearly establish Richardson was a co-worker with no supervisory control or authority over Ottman. Because Richardson was a private actor, he is not liable pursuant to section 1983. See Edwards, 49 F.3d at 1523; Woodward, 977 F.2d at 1400-01.
 
 III. CONCLUSION
 
 41
 We reverse the denial of qualified immunity for Hahl, dismiss the section 1983 claim against Richardson, and remand for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 This salary was above the minimum rate of pay for the position
 
 
 [2]
 The summary judgment record does not indicate when Marwedel was hired. Based on Ottman's and Hahl's depositions, it appears Marwedel was hired sometime in 1999
 
 
 [3]
 In her appeal brief, Ottman argues Hahl refused to interview her for the senior planning position. The summary judgment record shows Hahl did meet with her, albeit briefly, to discuss the position
 
 
 [4]
 Ottman's deposition reflects she was earning $25,000 at her previous employment with the City of Lee's Summit